The next appeal is docket number 25-1144, In Re Cobra Golf. Good afternoon. May it please the court, John Windsor on behalf of Appellant Cobra Golf Incorporated. There are a few issues to discuss here, questions of law, but I know despite the substantial evidence standard review, there's one here that gives an easy and immediate off-ramp to the court if they want to take it. So there were two grounds for rejection here, basically. We call it the design choice basis and the substitution basis, and it's clear that the design choice basis provided the motivation to combine for the substitution basis. Specifically the allegation that, excuse me, take a step back, when the board reversed on the design choice basis, it removed any support for the motivation to combine of the substitution basis, specifically the question of whether there would have been a predictable result. Without that, there's no substantial evidence to support that, there's no evidence in general to support that. I will say, I noted in our review there was one other spot in the appendix, Appendix 307, where the examiner and the examiner's answer pointed to a Yamamoto reference that was cited earlier in prosecution to say that the notion of a through-hole was known, or well-known and therefore predictable. Legally, that's insufficient, because under In Re Con, mere identification of an element is insufficient to establish predictability of it. So because there's no evidence to support the conclusion that the proposed modification would have been predictable as a result of the reversal of the design choice basis, there's no prima facie case here. Con came out before KSR, right? It did, and it was cited with approval in KSR. Yeah, but the KSR Supreme Court decision made it pretty clear that substitution of one known element for another, that it's nothing more than a predictable result, is very likely going to be obvious. Yes, but whether the elements are known and whether they're predictable are two different things, and there had to be findings supported by both. Here, the finding of the fact that they were known is separate of the finding of predictability, but also the basis on which the motivation was generated was the design choice basis. The examiner basically alleged this was no more than a change in shape, or a change in relative depth. The board said, no, we don't buy that. So because of that, there's no evidence to support the notion of predictability, which means there's no evidence to support the motivation to combine, which means there's no prima facie case here. So it's an easy way to... What if what the board was trying to say is, maybe there is some advantage of additional flexibility, but at the same time, you're still going to get the predictable result of a functioning golf club head. And so that's why the new substitution works here. Well, I would say a couple of points to that. Number one, the board didn't say that. In fact, they refused to consider any evidence related to the flexibility of the benefits that were there. In fact, they alleged that it didn't need to be considered because they were different legal doctrines. So we know that the board didn't say that because they treated them as completely different things. Right. But I think we can discern something from the board making a distinction between the word significant in the context of obvious design choice and predictable results in the context of mere substitution of one non-element for another. So... It did entertain this argument from the other elements in the hearing decision, did it not? It did not, actually. So we argued that the reversal of one required the reversal of the other, and the response was that they weren't because they were separate legal doctrines. In fact, they didn't consider that as part of it. Which goes to a larger question of the fact that under KSR, the standard is not whether there's a predictable result, but whether there's no more than a predictable result. And the reason for that is under In re Crocs, this court has held that two elements can be substituted, they can operate according to their known functions, and still yield more than a predictable result, and therefore be non-obvious. So, again though, the point is that their basis for this allegation of predictability, any substantial evidence they had to support it, was generated by the allegations based off of change in shape, or change in relative dimension, and the board reversed those. So there's nothing now left to support that allegation of predictability, and therefore no prima facie case. I'll say, the only other possible alternative is, there's a passage that's been disputed back and forth. We think it states the board's ground of rejection. There's parentheticals in it, that it would have been a simple substitution of one known element, i.e. a golf club, or a weight attached to the interior of a golf club, using a through hole for another one, a weight element attached to the inside using a blind hole, to produce a predictable result, which is the continued ability to attach a golf club via the through hole there. Points on that, number one, the office repeatedly, unequivocally, has stated that that is not part of the rejection. So, if we take them at their word, it can't serve to support any prima facie case. If we don't, and we consider that it's part of the rejection, then that question of how the weight attaches to the inside of the golf club becomes relevant. Then the question goes to, are the two elements known in the prior arc? Is there a weight attached to the inside of a golf club head via a blind hole, and a weight attached to the inside of a golf club head via a through hole? They cite Takeda for the first, Yamamoto for the second. It's clear Yamamoto does not teach that, because even if you look at element 12 as the weight element, and even if you look at the extended part on 13 as being some sort of post, the connection only attaches one to the other. And, as the director has said in his brief, even if those are both considered parts of weight elements, you're attaching a weight element to a weight element, not a weight to the inside of a golf club head. So, the thing that it's cited for doesn't show up. So, again, their argument falls apart there. So, I know I shouldn't start with questions of substantial evidence, because it stands against me, but those are clear. I think it's straightforward from our end as to why that's dispositive in COBRA's favor here. The other issues that I want to discuss are legal ones. First, the office's analysis is basically based on a legally improper reading of Supreme Court precedent in Adams and KSR. So, in Adams, the court defined what makes two things substitutes, namely that the device resulting from the substitute would have, quote, equivalent operating characteristics. And we know that that's not the case here. The board so found. The board found that the combined device operates differently, in a better way, with criticality that they deem significant. So, because of that, the argument is that these aren't equivalent components for the substitute. You argued unexpected results. Is that right? We did not. We argued... In fact, we said in our reply brief that we didn't argue it. But we don't believe that unexpected results are necessary, because to show more than... When you're talking about criticality and these other things, it really sounds like unexpected results to me. So, there's unexpected results. There's criticality. There's also synergy. So, in Anderson's Black Rock, the Supreme Court has said, basically, that if two components work together better than they did separately, then that can also provide a basis to find non-obviousness. That synergistic effect is what you have here. By having the weight being attached only to the post via the through-hole, you get these benefits of increased flexibility, responsiveness, improved distance, those kind of things. So, yes, we did not argue unexpected results, because we don't believe that they're necessary. Sure. What if there was a hardware store with a shelf that offered five different options for attachments of weights to the inside of a golf club head? And they're all just sitting there on the shelf. You can take any one of the five off the shelf, and they'll work. But it turns out that one of the five might offer certain advantages that the other four don't. Does the selection of that one suddenly make that option that seems otherwise super obvious all of a sudden non-obvious? I think the problem with your analogy is that it supposes that it's known that they all work, to start in the first place, and that they can be used for that purpose. I don't think that's the case here, because of what we talked about. If we're talking about the attachment of the weight to the golf club head, the Yamamoto reference doesn't teach that. The only way that you get to that is by backtracking through our specification. Now you basically engage in hindsight analysis. In your specific example, I think it's a closer case, but I don't think it is as relevant to the facts here. Turning back to the board's errors. Number one, I talked about atoms with equivalent operating characteristics. Number two, KSR talks about the combination must do more than yield a predictable result. We try to put forth arguments that it does yield it. The board shut that down. Again, they said that there are two different legal doctrines that don't need to be analyzed, the effect of one on the other. We think that this is in violation of the OCI reference, our case that basically talks about... In that case it said, quote, there's no Darden obviousness rejections or Albertson obviousness rejections, but rather only section 103 obviousness rejections. Here, there's no design choice rejections. There's no substitution rejections. There's only 103. 103 requires a full searching analysis of all the facts, all the arguments, all the evidence. The board said we're not going to consider it, and therefore it reached a conclusion on less than everything that it was required to, and we believe that that's legal error that requires reversal here. The second part is, as I mentioned, that the standard isn't whether it shows a predictable result. The office framework has basically been make an analysis, show predictable results, done. There's nothing else to consider. KSR specifically says, number one, you have to show more than a predictable result, or that it must show more than a predictable result, which means that you have to be afforded the opportunity to show that, and number two, that it may be obvious if you show a substitution that yields no more than a predictable result. Again, all of that counsels against a per se analysis, which is essentially what the court did here. I see that I'm right on my time. I'm going to reserve the rest for my vote. Good afternoon, Your Honors. May it please the Court. Justin Bowman for the Director of the USPTO. The only question here is whether the golf club head claimed would have been obvious, and the only limitation that's disputed is whether there would be a hole all the way through the weight versus the blind hole that's in the prior art. So in terms of what was known in the prior art, Takeda, the primary reference, had a blind hole, and Motokawa's relied on to say, here's a weight in the back of a club that performs the same functions to get the same improved results for a golf club head, and it has a hole in it. So the examiner said this is a substitution of one known element, a blind hole, for another known element, a weight with a hole all the way through it, to yield predictable results, which is continuing to be able to attach a weight to the golf club head. And the board entertained Kober's arguments when they argued, well, you wouldn't be able to still attach it if you included a hole all the way through because it would have issues with the caulking or how it would stay attached, and they rejected those arguments. So in essence, the board did find you would have predictability that you would still be able to attach the weight, and that's directly in line with KSRA's rationale of substituting one known element for another to yield predictable results. The board didn't outright reject or not consider the evidence. It considered the evidence of predictability, excuse me, and rejected Kober's arguments. In other words, the question was whether, in the board's view, they thought that a person working at A. Scaliart would be able to make this simple substitution, understand what needed to be done with the through hole to make it so there was a sufficient enough fit. That's generally right, Your Honor. Takeda has a blind hole, which if you think of the weight, it just has a little indent in the hole. It doesn't go all the way through. Like an aperture. Like an aperture. And the only difference between that and the claim was having the hole go all the way through. The examiner provided one example of that, which was to extend the post in Takeda to have it go all the way through, and then the board also considered, well, even if you didn't extend the post of Takeda and had it stay where it was, you could still have a weight with a hole that goes all the way through and have it attach to the golf club head. So the secondary record, does it have two weights that are being attached? And then I guess one of them has a hole that's all the way through? Yes, Your Honor. So Motokawa has two weights. Kober's argued that element 12 is not a weight because it's lighter than 13, but it is still a weight. That reference goes through the details of that. The specific gravity of it is much higher than another one, so it is adding weight to the back of the club, which is the whole purpose of adding it to the club, which is to give benefits of changing the center of gravity or improving distance or forgiveness of the golf club when you use it to swing at a golf ball. Generally, sometimes in board opinions that are relying on an examiner's rejection, sometimes the board opinion is a little bit more cursory, if you will. How much did you read into the board's analysis here in other cases and read it in light of the examiner's rejection? The board cites to the examiner's rejection multiple times, and it explains the rationale is this simple substitution, essentially rejecting Kober's argument that it made. So at appendix page 8 and 10, the board says, so at appendix page 8, the examiner emphasizes that the rejection relies on Motokawa only to teach an aperture extending entirely through a weight, i.e. a through hole. And then later in that paragraph on the bottom, in this regard the examiner frames the issue as, quote, whether it is obvious to use a through hole instead of a blind hole in a rear weight element. And again on appendix page 10, in the middle of that full paragraph towards the bottom, the examiner repeatedly indicated that the rejection of claim one relies on modifying Takeda's weight to have a through hole rather than a blind hole. So the examiner did do this analysis, and then the board adopted the examiner's analysis when it says the examiner has the better position. And then if you look at the examiner's final rejection, starting at appendix 256, and also, so at 257, it talks about Motokawa discloses an iron club head wherein the weight insert includes an aperture extending entirely there through. In other words, Motokawa is disclosing that having a weight with a hole all the way through it is known. And then later on says, thus, and then it presents multiple alternatives, the examiner does. And then concludes with, thus, it would have been obvious to one of ordinary skill in the art at the time of filing to modify Takeda to use a weight hole extending entirely through the weight as taught by Motokawa, because doing so would be a simple substitution of one element for another to obtain predictable results. I cut out parentheticals, but that's essentially what the examiner did. And again, in the examiner's answer, emphasizing it on that COBRA reference in its opening argument, appendix 307, that the examiner cites to multiple references and references back to the rejection from June, this is appendix 307, June of 2022, where the examiner specifically points to Yamamoto as evidence that through holes in weight with corresponding posts is well known in the art. It goes on to say, using a through hole to mount a weight was known in the art and predictable. The examiner made these findings and the board affirmed those findings and substantial evidence based on Motokawa and the examiner's reference back to the other references is not to say, oh, all these things were in the prior art. It is to say they were known in the prior art as known alternatives and you could substitute one for the other to obtain predictable results. The appellate tells us that there is an internal inconsistency in the board's decision given that the board rejected the rationale of modifying Takeda under an obvious design choice theory but nevertheless adopting a mere substitution theory and that rejecting one and adopting the other is inconsistent because necessarily to reject the obvious design choice theory you're accepting that the modification in the claimed invention has some significance to it and therefore the board needed to answer for that before it could go to the finish line and conclude that there's nothing more than predictable results here. Well, the board did answer for that at page 25 explaining the reasons for the different analysis which is the obvious design choice which Kober argued against the obvious change in shape and obvious change in size so I think it's better to phrase it that way as opposed to design choice but the board explained that the standard is different. You might be able to get what we'll call a significant... The standard is different in different words but how is it actually different? Well, because you can have a change as your Honor asked in the opening argument you can have a change that has advantages that could be significant but that doesn't mean that they are unpredictable and Kober hasn't made any showing that attaching the weight with the through-hole the way that Takeda would do it would have been unpredictable and that's what the board found. So you can have advantages... Which is burden is that? Maybe it's the PTO that has the affirmative burden in making the case for why something is unpatentable and so therefore it's the PTO that has to be the one that explains why it's nothing more than a predictable result rather than forcing the applicant to prove why it's an unpredictable result. Well, the examiner did do that and that's the evidence I walked through before in terms of what's well known and the examiner found predictability and then the board walked through, well even assuming what would be unpredictable here it's unclear because the board walked through the evidence and said well you attach the weight and with Takeda's method of attachment which is caulking and even this press fitting and you get the same predictable result which is a weight attached to a golf club head. So the PTO did meet that burden there. So what did the board mean when it said that there's some significant difference that requires a rejection of the obvious design choice theory? The board was describing the daily case when it used the word significant. It didn't necessarily say that the results here were significant but the board still accepting what COBRA had put forth in paragraphs 58 to 61 of its specification. About improved flexibility. About improved flexibility. When the board addressed that, if you turn to page appendix page 13 to 14, it talks about this section in paragraph 61 in the footnote. So the examiner had said the use of may in the specification doesn't mean you're necessarily going to get that result. And the board just said paragraph 61 of the specification states the suspension of the weight insert within the body may provide increased flexibility in the body and the board said well we think that COBRA has the better of the argument because the word may in a sentence describing the effect of the suspension of the weight insert to be an indication that this effect can be discounted in analysis. Rather in the context of that paragraph, we understand that the statement of this benefit may result to mean that the structure contributes to or enables this effect. Again, not rejecting the fact that there may be an effect but the question here for the KSR rationale is whether it is a more than predictable effect. The board considered that and rejected it. So you can still have a change. In the same way, in the Hotchkiss case, the difference between the doorknobs of a porcelain doorknob and the metal and the wood doorknobs in the prior, those are significant changes but they both still work to have a doorknob that opens the door. Unless your honors have any other questions. Okay. Thank you. A few points. First, the office has argued basically that components could be combined, still be significant but still be predictable. Again, we want to stress that the standard isn't are they predictable but is there evidence of being more than a predictable result. We think that the criticality here demonstrates that. In addition, the office talked about the idea of press fitting and caulking and how that yields predictability. In its brief, COBRA specifically argued that there were errors in the combination as a result of that. The board basically said that the method of attachment is not part of the office action. This is appendix pages 10 and 11. Appellants' arguments noted above attack or rejection that is not set forth in the final office action. Thus, appellants' arguments related to Motokawa's method of attaching a weight, including the assertion that Takeda teaches away from this method of attachment, do not identify an examiner error. So it's clear that the board didn't rely on that in reaching its decision. The board didn't address your caulking argument? It did not rely on that. It didn't take that piece from Motokawa. Nevertheless, did it not address your caulking argument? That's correct. It did address it, and it argued that it didn't evidence teaching away. But it was not part of the basis on which it held that there was no more than a predictable result there. Let's see. Also, the office talked about how he worked through the board's analysis, saying on... I apologize. Basically, working through the examiner's argument and then coming up with the conclusion that there would have been an obvious substitution to yield a predictable result. In that, the office basically said that the board goes through multiple arguments, glazes over those, and then reaches a conclusion. The multiple arguments that he was referring to were the case law arguments about the change in shape and change in relative dimension, the design choice basis. So again, the board went through multiple arguments, rejected the office, the examiner's position on those, and then reached a conclusion. Without those bases, there is no support for the motivation to combine, specifically for the notion that the combination would have been predictable. Again, without that, there's no premonition case. Without a premonition case, reversal is required. I see I'm out of time. Thank you. Thank you very much.